UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALTICOR, INC.,

      Plaintiff,

Case No. 1:03-CV-350

v.

Hon. Richard Alan Enslen

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

**OPINION**

      Defendant.
_____/

      Pending before this Court is Plaintiff Alticor, Inc.'s Motion for Partial Summary Judgment and Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment. Both seek summary judgment in this diversity declaratory action on the issue of whether Defendant (the insurer) owed to Plaintiff (the insured) a continuing duty to defend as to a Texas law suit after February 2, 2004. Oral argument is unnecessary and would unduly protract decision.

**BACKGROUND**

      Plaintiff Alticor, Inc. (formerly known as Amway Corporation) is a Michigan corporation which conducts business in Michigan, Texas and many other states and countries. (Compl. ¶¶ 4-5.) Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a member of the American International Group, Inc. and wrote commercial general liability policies for Plaintiff from September 1, 1991 through November 1, 1998. *(Id.* ¶ 13 & Ex. B1-B7.)

      In 1998 and 1999, three lawsuits and claims were filed against Plaintiff in Harris County, Texas with like claims: (1) the *Morrison* lawsuit–*Morrison et al. v. Amway Corp. et al.,* Case No. 98-00367 (S.D. Tex.); (2) the *Griffith* lawsuit–*Griffith et al. v. Amway Corp. et al.*, Case No. 98-17491

(190th Jud. Dist. Ct.); and (3) the *Vance* lawsuit–*Vance et al. v. Amway Corp. et al.*, Case No. 99-44470 (198th Jud. Dist. Ct.). (*Id.* ¶¶ 10-11 & Ex. A1-A11.) The *Griffith* and *Vance* cases eventually settled, but the *Morrison* case was resolved later by an arbitration proceeding in Plaintiff's favor. (Pl.'s Brf. in Supp. of Mot. for Part. Summ. J., Ex. H.)

Because of the insurance coverage, Plaintiff tendered the defense of all of the claims in the three suits to Defendant. Defendant, by letter of March 12, 1998, agreed to provide defense of the claims under the terms of the policies providing for coverage of "personal injury" liability and specifically coverage of any "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . " (*Id.*, Ex. B at 2-3.)

During the course of the *Morrison* suit, the *Morrison* suit was referred to arbitration. At the arbitration, the arbitrator asked the *Morrison* plaintiffs to clarify their pleadings by providing a list of the causes of actions that remained in the case. The list included the following claims: fraud, breach of contract, tortious interference with current and prospective businesses, implied breach of contract and express and implied warranties, Texas Deceptive Trade Practices Act, breach of fiduciary duty, conspiracy and anti-trust violation. (*Id.*, Ex. E.) The list did not include reference to defamation or disparagement. Based on that listing (made on February 2, 2004), Defendant has declined coverage of any and all defense costs incurred after February 2, 2004. (*See* Def.'s Brf. in Supp. of Mot. for Summ. J., Ex. 7.)

This suit was filed in this District on or about May 22, 2003. At that time, Plaintiff's Complaint only sought to resolve disputes over whether the allegations giving rise to the coverage constituted a single "occurrence," "offense" or "common cause" within the meaning of the policy language and the impact of this determination upon Plaintiff's deductible. (Compl. ¶ 16.) Plaintiff

2

filed its Amended Complaint on October 2, 2003, requesting not only a declaration as to the above policy issues (Count I), but also requesting damages for bad faith denial of coverage (Count II) and reformation of National Union Policy RM GL 143-79-37 (Count III). (Am. Compl. ¶¶ 37-64.) The present Motions do not address these claims, but do address a related issue: whether the duty to defend continued after the alleged abandonment of defamation claims during the *Morrison* arbitration. This is a significant issue since Plaintiff has incurred some $2 million dollars of defense costs after June 2, 2004.[1] (Def.'s Brf. in Supp. of Mot. for Summ. J., 3 n.1.)

**STANDARDS FOR SUMMARY JUDGMENT**

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

---

[1] While this is a significant issue, its resolution is only one aspect of this suit. Earlier the Court denied summary judgment to both sides as to other legal issues. (Order of Sept. 23, 2005, Dkt. No. 243.)

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

This is a diversity suit premised on the application of Michigan law (the place of business of the insured Plaintiff). Since these motions pertain to matters of state law, the Court must apply state law as determined by the state's highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If a state's highest court has not spoken to an issue, the Court must determine state law based on "all relevant data," including decisions of intermediate state courts, decisions of federal courts interpreting state law, case precedents from other states, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing cases). In this process, intermediate state court decisions are especially important unless the other data suggest that the state's highest court would not follow such decisions. *Id.*

Under Michigan law, an insurer's duties to defend are broader than the duty to indemnify. *Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994); *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). The duty to defend arises in instances in which coverage is even arguable, though the claim may be groundless or frivolous. *Id.* The duty to defend depends on the allegations of the underlying complaint; the duty arises if the allegations even arguably come within the policy coverage. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980); *Pattison v. Employers Reinsurance Corp.*, 900 F.2d

4

986, 988 (6th Cir. 1990). This is true even if the underlying complaint contains some theories of liability which are not covered under the policy language. *Id.* Once the duty to defend arises, it continues until all theories of possible liability are eliminated. *North Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997). If there is any doubt as to whether the insurer has the duty to defend, the doubt must be resolved in favor of the policy holder. *Id.*

In the instant case, notwithstanding the dismissal of the "defamation" and "disparagement" theories in *Morrison*, the suit retained theories of liability which fall within the duty to defend a "personal injury" lawsuit. First of all, the dismissal of the legal claims of "defamation" and "disparagement" did not affect the factual allegations of the *Morrison* matter, which remained pending. Second, coverage was still proper under a variety of legal theories which were retained as part of the *Morrison* arbitration–namely, the tortious interference claim and the claimed violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46 ("TDPTA"). It is the substance of the alleged injury, not the nomenclature, which determines the duty to defend. *Citizens Ins. Co. v. Pro Seal Serv. Group Inc.,* – N.W.2d – , 2005 Mich. App. LEXIS 2682, *10 (Mich. Ct. App. 2005) (citing *Michigan Educ. Employees Mut. Ins. Co. v. Karr,* 576 N.W.2d 728, 730 (Mich. Ct. App. 1998)). Those legal theories were premised on the making of false and defamatory statements. The tortious inference allegations included the allegation that the insured had "tortiously interfered with Plaintiffs' contractual relationship with . . . Plaintiffs' respective own downline independent distributors [by] . . . making false defamatory and damaging statements to them about Plaintiffs . . . ." (Pl.'s Mot. for Partial Summ. J., Ex. C at 17.) Similarly, the TDPTA allegations charged that the insured's agents had engaged in "unfair and deceptive acts in the conduct of the Amway related business in violation of the Texas Deceptive Trade Practices Act." (*Id.*, Ex. C at 20-21.) This theory was explained further in the arbitration briefing–which indicated that the *Morrison* plaintiffs claimed

that the insured had "disparaged" the *Morrison* plaintiffs by "public expulsion" and "falsely representing Claimants were unworthy of association . . . ."[2] (*Id.*, Ex. I at 23.)

When faced with like situations wherein commercial general liability policies were issued and an insured sued for tortious interference involving acts of disparagement, courts have held that the tortious interference claims trigger the duty to defend. *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 744-45 (7th Cir. 2001); *St. Paul Fire & Marine Ins. v. Medical X-Ray Ctr., P.C.*, 146 F.3d 593, 595 (8th Cir. 1998). Indeed, in *St. Paul*, as in this case, allegations included factual claims that the insured had made statements depicting plaintiff's services/goods as inferior. The Eighth Circuit, therefore, rightly held that the allegations alleged a sufficient "personal injury" to invoke the duty to defend. *Id.* Both the tortious interference theories and TDTPA theories of recovery which were presented in the *Morrison* Complaint and during the arbitration were sufficient to trigger Defendant's duty to defend.

Defendant has sought to avoid its duty by referring to this Court's coverage decision in a separate case–*National Union v. Alticor, Inc.*, 2005 U.S. Dist. LEXIS 29833, *9-*10 (W.D. Mich. Sept. 12, 2005)–involving a Missouri law suit–*Nitro Distrib., Inc. v. Alticor, Inc.*, Case No. 03-3290-CV-S-RED (W.D. Mo.). Although the Missouri case did involve nominal "tortious interference" claims, the substance of the case was much different. In that case, the factual allegations centered upon anti-trust allegations and the mention of tortious interference, without supporting factual allegations suggested false and defamatory statements, was insufficient to trigger the duty to defend. In this case, not only are there two separate legal theories supporting the duty to defend, but there are

---

[2]Defendant argues that "expulsion" is not itself a statement and therefore not covered under the policy language. While this may be true, it is also true that the allegations of both the Complaint and argument imply that, in addition to expulsion, the insured's agents made other explicit false and disparaging statements.

multiple factual allegations supporting the duty which indicate the making of false and defamatory statements. Accordingly, the *Nitro* coverage decision is properly distinguished as based upon wholly divergent facts.

Much of National Union's arguments about the coverage seek to imply that the withdrawal of the fraud and disparagement theories of liability constituted a withdrawal of all of the factual allegations supporting either fraud or product disparagement. This argument, though persuasively urged, is not prevailing. The withdrawal of the fraud and disparagement claims did not clearly withdraw all supporting factual allegations. Indeed, the continued maintenance of the tortious interference and TDTPA claims suggest the reverse. Plaintiff was entitled to coverage until it became clear that the allegations which gave rise to the duty to defend (as determined by National Union in the first instance) were completely dismissed. This never occurred.

For these reasons and those argued at length in Plaintiff's briefing, Plaintiff's Motion for Partial Summary Judgment must be granted and Defendant's Motion for Summary Judgment must be denied.

## CONCLUSION

In accordance with the Opinion of this date, Partial Judgment shall enter granting Plaintiff's Motion and denying Defendant's Motion.

Dated in Kalamazoo, MI:  /s/Richard Alan Enslen
February 17, 2006         Richard Alan Enslen
                          Senior United States District Judge